## Auto-Owners Mut. Ins. Co. v. Progressive Cas. Ins. Co.
## Case No. 11441
## Montgomery County, (2nd)
## Decided January 4, 1990
[Cite as 1 AOA 97]

*Gordon Arnold, 1000 Talbott Tower, Dayton, OH 45402; Attorney for Plaintiff-Appellant,*

*Carmine Garofalo, 1401 Talbott Tower, Dayton, OH 45402; Attorney for Defendant-Appellee.*

FAIN, J.

This is an insurance action that arises out of an automobile collision that occurred on November 13, 1984. Pursuant to an uninsured motorist provision in its insurance policy, plaintiff- appellant Auto-Owners Insurance Company paid $50,000 to the estate of the decedent who was a passenger in an automobile insured by defendant-appellee Progressive Casualty Insurance Company. Auto-Owners filed an action in the Montgomery County Court of Common Pleas seeking a declaratory judgment that it had no obligation to pay any amount under its uninsured motorist provision and that Progressive, the insurer of the automobile involved in the collision, was responsible for reimbursing Auto-Owners for the $50,000 payment. The trial court held that because Progressive's policy did not include a permissive operator provision, and because its insured did not pay an additional premium to purchase such coverage, Auto-Owners could not seek reimbursement from Progressive. We conclude that the trial court erred in finding that Progressive was not required to reimburse

Auto-Owners for the payment of $50,000. Accordingly, the judgment of the trial court will be reversed, and this court will enter judgment as a matter of law, pursuant to App. R. 12(B).

I

On April 20, 1984, Gregory Koerber went to his insurance broker, Thomas Bohlander, to purchase liability insurance for his 1979 Triumph TR-7 that was kept at his mother's home in Lima, Ohio.

Koerber originally intended to purchase the liability insurance from Central Mutual. However, that company did not insure sports cars, so Bohlander suggested that Koerber purchase liability insurance from Progressive.

Koerber completed Progressive's insurance application and provided Bohlander with a check to cover the insurance premium. Koerber was the named insured on the policy, and the policy period ran from April 20, 1984, to October 20, 1984.

There is some dispute as to whether Koerber's liability policy ever became effective. Robert Fletcher, a Progressive representative, testified that Koerber's policy of insurance had been cancelled because of some problems with the premium payment.

However, after investigating the circumstances involving the purported cancellation, and after discovering that Bohlander had represented to Koerber that his policy was in effect, Progressive decided to recognize that Koerber, only, had liability coverage until November 13, 1984.

The Progressive policy initially issued to Koerber agreed to pay all sums for bodily injury that the insured was legally obligated to pay. The policy defined "insured" as the named insured and any additional driver specifically named in the policy while using an automobile described in the policy.

Koerber's policy did not include a permissive operator endorsement. The application for insurance coverage did include two places to list additional drivers who would be covered under the terms of the policy. No additional drivers were listed by Koerber.

On July 30, 1984, Progressive changed its basic policy of automobile liability insurance. After that date, all new or renewed policies of automobile liability insurance included a permissive operator endorsement.

That endorsement specifically provided that:

In consideration of the premium charged, it is agreed and understood that the policy to which this endorsement is attached is amended as follows:

Part I - Liability
Persons Insured. The following are insured under Part I:

a) With respect to the owned automobile
(1) The named insured
(2) Any other person using such automobile, provided the actual use thereof is with the permission of the named insured.

In the summer of 1984, Koerber brought his T-7 to his home near Covington, Ohio. On November 13, 1984, Koerber expressly gave permission to Carol Tufts to operate his automobile. While operating the vehicle, Tufts was involved in a single-car collision. Tufts's passenger, Donna Cragg, was killed.

Auto-Owners, pursuant to a policy of insurance issued to David Gragg, Executor of the Estate of Donna Gragg, provided uninsured motorist coverage in the amount of $50,000. Auto-Owners paid the $50,000 limit to David Gragg, but reserved the right to litigate the issue as to whether it was entitled to reimbursement from Progressive.

After settling Gragg's Claim, Auto-Owners filed a declaratory judgment action seeking reimbursement from Progressive for the $50,000 payment. On February 21, 1989, the trial court filed a final judgment entry in which it held that Auto-Owners was not entitled to reimbursement from Progressive. From that judgment, Auto-Owners was not entitled to reimbursement from Progressive. From that judgment, Auto-Owners appeals.

II
Auto-Owners' sole Assignment of Error is as follows:

THE TRIAL COURT ERRED IN FINDING THAT PROGRESSIVE WAS NOT REQUIRED TO PROVIDE COVERAGE TO THE PERMISSIVE USER OF GREGORY KOERBER'S AUTOMOBILE.

Auto-Owners presents two arguments in support of its theory that it should be reimbursed by Progressive for the $50,000 payment to Gragg. Both of Auto-Owner's arguments turn upon whether the policy of

automobile liability insurance issued to Koerber by Progressive included coverage for permissive operators.

In its first argument, Auto-Owners contends that because "restrictions on permissive use" were never agreed upon by Koerber and Progressive, "* * * there was no meeting of the minds between Progressive and Koerber regarding the restriction of permissive use to only Mr. Koerber or specifically named drivers on Koerber's policy." Auto-Owners further contends that because Koerber indicated to Bohlander that he was purchasing insurance on the TR-7 "* * * with the idea that his mother would be able to drive the car like back and forth to the mall[,]" what Koehler actually contemplated, and what Bohlander and Progressive should have understood, was that permissive operators of the automobile would be covered under the terms of the liability policy. We disagree.

In *Nationwide Mutual Insurance Company v. Marsh* (1984), 15 Ohio St. 3d 107, 109, the Supreme Court of Ohio held that:

[i]t is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. (Citation omitted.)
Therefore, the terms of the policy must be mutually agreed upon to be effective, in accordance with contract principles.

In the case before us, there is no evidence that Koerber and Progressive mutually assented to the inclusion of a permissive operator provision in Koerber's original automobile liability policy. Simply because Koerber had "contem-plated" the idea of allowing his mother to use the automobile does not mean that a permissive user provision was bargained-for, or that such a provision became part of the insurance contract.

Therefore, Koerber's policy, as originally executed on April 20, 1984, covered only Koerber, the named insured.

In its second argument, Auto-Owners argues that because Progressive required the inclusion of a permissive operator endorsement in all new and renewed automobile liability policies after July 30, 1984, Koerber's policy, in effect on November 13, 1984, included permissive operator coverage.

We agree.

The trial court held that:

* * * While Carol Tufts was driving the Triumph TR-7 owned by Gregory Koerber * * * she was not an insured under the Progressive policy issued to Gregory Koerber because the insurer and the insured under that policy had not agreed that the policy should contain a permissive user endorsement and it in fact did not contain such an endorsement nor was a premium paid by the insured to the insurer for such an endorsement.

We conclude that the trial court erred in two respects in reaching its determination. First of all, on November 13, 1984, the date of the automobile collision, Koerber's policy included the permissive operator endorsement. As of July 30, 1984, all new or *renewed* automobile liability policies issued by Progressive included the permissive operator endorsement. On October 20, 1984, Koerber's policy was scheduled for renewal, since the original term of the policy was expiring on that date.

Pursuant to R.C. 3937.31, every automobile insurance policy shall be guaranteed renewable for successive policy periods totaling not less than two years. Moreover, except in certain situations,[1] no insurer may cancel such policy. Even if an insurer has a legitimate reason to cancel an insured's automobile insurance policy, R.C. 3937.32 provides that no cancellation is effective unless it is pursuant to written notice.

In the case before us, Progressive has effectively conceded that Koerber's automobile liability policy was not cancelled in accordance with legal requirements. Koerber testified that, at the time of the accident, he had not received "anything" from Progressive, but that he was expecting a bill.

Based upon the foregoing, we conclude that Koerber's policy of automobile liability insurance was scheduled for renewal in October, 1984. Because there was no valid reason to have cancelled Koerber's policy, Progressive was legally obligated to renew Koerber's policy. Finally, because Progressive had mandated that after July 30, 1984, new and renewed policies of automobile insurance were to include a permissive operator endorsement, Koerber's policy, as renewed, included such coverage.

As noted above, the trial court erred in two respects. The second manner in which the trial court erred was by placing undue emphasis upon the fact that Koerber did not pay for the permissive operator coverage.

At his deposition, Fletcher was questioned as to whether there was an additional premium payment required for the permissive operator endorsement. Fletcher initially testified that he did not know. However, later in the deposition, and without objection, Fletcher was given a memorandum concerning the permissive operator endorsement. Fletcher testified that *** in this memo *** it says that it was an additional premium to be charged for this endorsement. So if we--after July of 1984 if it were part of the basic contract, we would have included that in are [sic] overall rate level."

As noted by Progressive in its belief, a reasonable inference from Fletcher's testimony is that the additional premium charged for the permissive operator endorsement was simply incorporated into the basic rate of insurance. Because the permissive operator endorsement was considered to be part of the basic package, and because the premium for such coverage was incorporated into the basic rate, there was no need for the parties to have negotiated permissive user coverage as an additional term, and there was no reason for the trial court to have found that the permissive user coverage was not included in Koerber's policy without an additional premium having been paid.

Auto-Owners' sole Assignment of Error is sustained.

### III

Auto-Owners' sole Assignment of Error having been sustained, the judgment of the trial court will be reversed. This court will enter its own declaratory judgment, pursuant to App. R. 12(B), declaring that Progressive is obligated to reimburse Auto-Owners for its $50,000 payment to Gragg.

BROGAN and GRADY, JJ., concur.

GRADY, J., concurring:

I concur in the opinion of the majority, and would add that our decision to reverse the trial court results from the application of two doctrines frequently used in construing insurance policies. First, we have recognized that the notion of "bargaining" has little real application in the relationship of the insured and insurer. Most applicants take what they can get, at least in the basic policy, and are certainly not in an equal position with the insurance provider to insist on changes they may want. Second, we recognize that the system of regulation as set forth in R.C.

Chapter 3902, and particularly in R.C. 3902.08 requiring that policies be approved by the Superintendent of Insurance, requires that all policy holders be treated by carriers in a uniform fashion. Thus, if we hold that Progressive's coverage of Koerber extended beyond the usual cancellation date, that coverage must in its basic form be the same as issued to all other policyholders at that time and not simply an extension of the former coverage no longer granted to any policyholder.

Applying the foregoing doctines, we may find that the trial court erred in its finding of fact concerning the nature of the coverage extended. Absent that conclusion, we may not reverse the trial court on the error alleged.

---

[1] Pursuant to R.C. 3937.31, an insurer is permitted to cancel an insured's automobile insurance policy:

(a) if the terms of the policy permit cancellation;

(b) in accordance with sections 3937.30 to 3937.39 of the Revised Code;

(c) if the insured has misrepresented a material fact to the insurer;

(d) if the insured has lost his or her driving privileges;

(e) if the insured has failed to pay the premiums on the policy; or

(f) if the insured moves to or licenses his or her vehicle in a state where the insurer is not authorized to write automobile coverage.